Connolly, J.

PRELIMINARY BACKGROUND

The underlying negligence action was tried in Norfolk Superior Court, commencing on April 26, 1999. The case involved two claims against the defendant, namely negligence for creating or allowing a dangerous condition to exist in its parking lot and a G.L.c. 93A claim against the landowner (not its insurer, Vermont Mutual Insurance Company). The two claims were severed, the negligence case to be tried to the jury, and the 93A claim to be tried non-jury to the Court.
The plaintiffs claim on negligence was that the plaintiff, on April 26, 1996, fell on a ramp (walkway) leading to cars in a parking lot, which ramp created an unreasonable tripping hazard because it had an unusually high lip at its lower edge, did not have a smooth transition, and was not painted or otherwise marked so as to alert pedestrians to the change in elevation.
The jury, on April 30, 1999, returned a verdict for the plaintiff in the amount of $700,00.00, less twenty-one percent comparative negligence, plus the statutory interest to be added by the clerk.
The next issue to be faced is the c. 93A claim against the defendant. Since the issue of proper notice was highly contested, the parties, with the concurrence of the Court, agreed to first try the issue of whether the plaintiff served a sufficient c. 93A demand letter upon the defendants prior to the filing suit in this action.

FINDINGS OF FACT

The plaintiff was injured on April 26, 1996, at 1261 Furnace Brook Parkway, Quincy, Massachusetts. The plaintiff tripped and fell on a ramp (walkway) leading to cars in a parking lot, which tripping and falling was caused by an unreasonably high lip at its lower edge, because it did not have a smooth transition and because it was not painted or otherwise marked so as to alert pedestrians to the change in elevation.
On April 11, 1997, plaintiffs counsel sent a letter to the defendant informing the defendant of the subject injury and of the “defect on your property,” briefly setting forth the plaintiffs injuries, and asking the defendant to pass on the information to its insurer. A copy of said letter is attached and marked “exhibit #1.” 
On June 5, 1997, a meeting of the Vermont Mutual’s claim representative, James L. Feltham, plaintiffs attorneys Richard P. Campbell and James J. Ciapeiak and the plaintiff, Elinor DiBona, took place at the law office of Campbell, Campbell & Edwards in Boston. The claim was discussed in detail. Plaintiffs counsel allowed the insurer’s claims representative to informally ask the plaintiff about her injuries and the way her accident happened. Further, plaintiffs coun *477 sel offered to exchange any expert’s reports with the insurer. The insurer refused to agree to a mutual exchange of expert reports, by letter dated June 18, 1997. At said June 5, 1997 meeting, counsel for the plaintiff informed and discussed with the claims representative that the plaintiff would be seeking c. 93A double or triple damages, plus attorneys fees.
On June 13, 1997, plaintiffs attorney sent a letter (attached hereto) to James L. Feltham, Vermont Mutual Insurance Group, thanking him for meeting with the plaintiff and plaintiffs counsel, enclosing a copy of Doctor Perlmutter’s operative report relative to the plaintiffs left hemiathroplasty, agreeing to exchange expert’s reports, making a demand of $750,000 and indicating as follows: “Please be advised that we will file suit in thirty days if this case cannot be settled.”
On July 27, 1997, this civil action was commenced in negligence and for relief under c. 93A against the landlord defendant, only.

RULINGS OF LAW

“[T]he purpose of the demand letter is to facilitate the settlement and damage assessment aspects of c. 93A and as such the letter and notice therein is a procedural requirement the absence of which is a bar to suit.” Entrialgo v. Twin City Dodge, Inc., 368 Mass. 807, 813 (1975). “A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proven.” Entrialgo, supra at 813. One of the functions that a demand letter serves “is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct.” Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (Quirico, 1975).
The key case on the sufficiency of this notice is Cassano v. Gogos, 20 Mass.App.Ct. 348 (Kass. 1985). In Cassano, the Appeals Court stated that a written demand under c. 93A needs to both define the injury suffered and the relief sought and to make reference to either some signal to alert a reasonably perceptive recipient or one of six factors.[1] Id. at 350-51. Here, the Court is faced with two issues, namely (1) was the notice sufficient as to the defendant, and (2) if it was not, can the oral conversation and letter dated June 13, 1997 to the insurer’s claim representative be considered as a supplement to the original “claim letter” (plaintiffs attorneys letter of April 11, 1997). The only notice given to the defendant was the April 11, 1997 letter, and that was obviously inadequate under Cassano v. Gogos, supra 350-51.
The plaintiff urges the Court to consider the letter of June 13, 1997, to the insurer, Vermont Mutual Insurance Group, as a supplement to its April 11, 1997 letter, and for the Court to consider notice to the insurer as notice to the defendant-insured. The June 13, 1997 letter may be argued as sufficient notice under 93A if it liad been sent to the defendant. For example, it contains a definition of the injury sustained, the relief sought, and reference that the plaintiff expected or anticipated a settlement offer within thirty days. However, it was not sent to the defendant.
In addition to the requirement of the statute, c. 93A, §9(3), that a written demand be made on any “prospective respondent,” here the defendant-trustees, there is a substantial and practical further reason why demand should be made on the defendant. Here the defendant has a liability policy in the amount of $2,000,000.00 with Vermont Mutual. However, Vermont Mutual has consistently maintained the position (although very dubious to this Court) that the c. 93A claims are not covered under its policy because they are “punitive” in nature. As a result, the defendant was deprived of the ability to consult counsel and did not have knowledge or notice of the c. 93A claim until it was served with the civil complaint. This is not in compliance with c. 93A, §9(3), and constitutes an inadequate demand letter.
The plaintiff argues that Vermont Mutual made itself the agent for the defendant when it informed plaintiffs counsel that all communications concerning Ms. DiBona’s claim should be made directly to Vermont Mutual, and not to Vermont’s insureds. Further, in April 1997, Michael Shuipis, a trustee of Furnace Brook, had instructed James Ciapciak (of Campbell, Campbell & Edwards) that Vermont Mutual was handling Ms. DiBona’s claim and that all communications should be directed to Vermont Mutual. This Court interprets such statements to mean as they concern the handling and adjustment of the claim. It certainly did not apply to the service of the summons and complaint, as the plaintiff properly served the defendant-trustees. Likewise, the requirement of c. 93A, §9(3) requires notice to be served as a written demand on the prospective respondent. This the plaintiff did not do.
The Court finds that the letter of April 11, 1997, sent to the defendant to be inadequate as a matter of law. The Court finds that the oral conversations between plaintiffs counsel and the insurer to be inadequate notice as a matter of law. The Court further finds that the June 13, 1997 letter sent to Vermont Mutual not to be adequate notice, as it was not sent to the defendant as required by the statute.

ORDER

It is ordered that the notice given by the plaintiff to the defendant, pursuant to c. 93A, §9(3) is inadequate as a matter of law, and judgment is to be entered for the defendant on the count claiming damages under c. 93A.

The six factors listed by the Appeals Court are:
(1) any express reference to c. 93A; (2) any express reference to the consumer protection act; (3) any assertion that the rights of the claimants as consumers have been violated; (4) any assertion that the defendant has acted in an *478 unfair or deceptive manner (G.L.C.93A, §2[a]); (5) any reference that the claimants anticipate a settlement offer within thirty days [ ]; or (6) any assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied.
Cassano v. Gogos, supra at 350-51.